IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW ALLEN,

       Plaintiff,

                                  3:11-CV-218-PK

                                  FINDINGS AND
v.                                   RECOMMENDATION

STATE OF OREGON, DON MILLS, LAINE
IVERSON, LORI DAVIS, SONNY RYDER,
DAREN DUFLOTH, JAMES EDISON, JOHN
MYRIC, CAMERON BAUER, and TORRES,

       Defendants.

_____

PAPAK, Magistrate Judge:

       Incarcerated plaintiff Matthew Allen filed this action against defendants the State of

Oregon, Don Mills, Laine Iverson, Lori Davis, Sonny Ryder, Daren Dufloth, James Edison, John

Myric, Cameron Bauer, and Torres on February 22, 2011.  Allen is, and at all material times has

been, represented by counsel in this action.  By and through his complaint, Allen alleges the

Page 1 - FINDINGS AND RECOMMENDATION

liability of defendants Mills, Iverson, Davis, Ryder, Dufloth, Edison, Myric, and Bauer in

connection with one count of a claim arising under 42 U.S.C. § 1983 for failure to protect him

from a known risk of harm in violation of his rights under the Eighth Amendment in connection

with assaults on Allen at the hands of fellow prisoners that took place on February 22 and March

13, 2009, the liability of all individual defendants in connection with a second count of the same

Section 1983 claim in connection with an assault on Allen at the hands of a fellow prisoner that

took place on August 7, 2009, and the liability of the State of Oregon for negligence in

connection with the same three assaults.  This court has federal-question jurisdiction over Allen's

Section 1983 claim pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental

subject-matter jurisdiction over Allen's negligence claim pursuant to 28 U.S.C. § 1367.

Now before the court is defendants' motion (#17) to dismiss Allen's negligence claim for

lack of personal jurisdiction pursuant to Federal Civil Procedure Rule 12(b)(2) and to dismiss

Allen's Section 1983 claim for failure to exhaust available administrative remedies pursuant to

Federal Civil Procedure Rule 12(b).  I have considered the motion and all of the pleadings on

file.  For the reasons set forth below, Allen's negligence claim against the State of Oregon should

be dismissed for lack of subject-matter jurisdiction, defendants' Rule 12(b)(2) motion to dismiss

Allen's negligence claim against the State of Oregon for lack of personal jurisdiction should be

denied as moot, Allen's unenumerated Rule 12(b) motion to dismiss Allen's Section 1983 claim

for failure to exhaust administrative remedies should be granted, and Allen's Section 1983 claim

should be dismissed without prejudice.

Page 2 - FINDINGS AND RECOMMENDATION

## LEGAL STANDARDS

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Civil Procedure Rule 12(b)(2).  *See* Fed. R. Civ. P. 12(b)(2).  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), *citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  In evaluating the defendants' motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *citing Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If the court decides the motion based on the pleadings and affidavits submitted by the parties without conducting an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss."  *Id.*, *quoting Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In the absence of such an evidentiary hearing, the court accepts uncontroverted allegations contained within the plaintiff's complaint as true, and resolves conflicts between statements contained within the parties' affidavits in the plaintiff's favor.  *See id.*

### II.    Motion to Dismiss for Failure to Exhaust Available Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including actions brought under 42 U.S.C. § 1983:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, actions brought with respect to "prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind as well as prisoner petitions challenging conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the available administrative remedies and without regard to the types of remedies available under available administrative grievance procedures. *See id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n. 5, 741 (2001).

Inmates are not required to plead or demonstrate exhaustion before bringing prison-conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  To the contrary, an incarcerated plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that it is the burden of the defendant in a prison-conditions lawsuit to raise and prove. *See id.*  The courts of the Ninth Circuit treat failure to exhaust administrative remedies "as a matter in abatement, . . . subject to an unenumerated Rule 12(b) motion" to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding an unenumerated Federal Civil Procedure Rule 12(b) motion to dismiss for failure to exhaust available administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120.  "If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim

without prejudice." *Id.*

## FACTUAL BACKGROUND[1]

Allen has been in the custody of the Oregon Department of Corrections ("ODOC") since March 16, 2007. He was housed at the Two Rivers Correctional Institution ("TRCI") from November 21, 2007, to September 30, 2009, and again from December 15, 2010, until the present. During the period between September 30, 2009, and December 15, 2010, Allen was housed at the Snake River Correctional Institution ("SRCI").

At both TRCI and SRCI, Allen had available to him a three-level grievance procedure. Inmates at TRCI are advised of the grievance procedure and instructed in how it is used in the course of an Admission and Orientation class they are required to take when they first arrive at the institution. In addition, information regarding the grievance process is contained in an inmate handbook made available to all TRCI and SRCI inmates.

Pursuant to the ODOC grievance procedure and applicable Oregon Administrative Rules, "[i]f an inmate is unable to resolve an issue through informal communications, [the] inmate may seek resolution of the issue by submitting a written grievance using the department's approved inmate grievance form (CD 117)." OAR-291-109-0140(1)(a). Any such grievance "must include a complete description of the incident, action, or application of the rule being grieved, including date and approximate time," and should be accompanied by any referenced documents. OAR-291-109-0140(1)(b). Matters, actions, and incidents that an inmate may properly grieve are

---

[1] The following recital of material facts constitutes my construal of the evidentiary record for purposes of defendants' unenumerated Federal Civil Procedure Rule 12(b) motion. Facts set forth below not specifically alleged in Allen's complaint will be disregarded for purposes of defendants' Federal Civil Procedure Rule 12(b)(6) motion.

the "misapplication of any administrative directive or operational procedure," the "lack of an administrative directive or operational procedure," any "unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer of [ODOC] or the Oregon Corrections Enterprises," any "oversight or error affecting an inmate," any "program failure as defined in . . . OAR-291-077-0020," except where such failure was caused by the inmate's misconduct, or the "loss or destruction of [the inmate's] property. . . ." OAR-291-109-0140(2). "An inmate grievance may request review of just one matter, action, or incident per inmate grievance form." OAR-291-109-0140(1)(d). Similarly, inmates are not permitted to grieve the actions of more than one ODOC employee through a single grievance form, but rather must file one grievance form per ODOC employee whose actions are the subject of the inmate's challenge. *See* OAR-291-109-0140(3)(e). In addition, inmates are not permitted to grieve any claim or issue "that the inmate is pursuing in pending litigation in state or federal courts." OAR-291-109-0140(3)(f). A grievance will not be processed unless it is received by the applicable grievance coordinator on form CD 117 "within 30 calendar days of the date of the incident giving rise to the grievance." OAR-291-109-0150(2).

Upon receipt of an inmate grievance, the applicable grievance coordinator is required to "assign the grievance a number and record its receipt in an inmate grievance log" and to "send a grievance receipt to the inmate." OAR-291-109-0160(1) and (1)(a). The grievance coordinator is then required to coordinate with the ODOC employee best suited to respond to the grievance, and to send the inmate's grievance to that person "for reply." OAR-291-109-0160(1)(b). The response must "be returned to the grievance coordinator for processing within 21 calendar days." OAR-291-109-0160(1)(c). Following such processing, the grievance coordinator is required to

Page 6 - FINDINGS AND RECOMMENDATION

send the inmate copies of both the grievance and the response, and to retain copies for the

grievance coordinator's files, all within "45 days from the date the grievance was received" by the

grievance coordinator, "unless further investigation is necessary." OAR-291-109-0160(2). In the

event the grievance coordinator fails to complete processing of the grievance within 45 days of

its receipt, "the grievance coordinator will make an effort to notify the inmate of the status of the

grievance." *Id.* "If the inmate does not receive a response within the allotted time frame, he/she

may contact the grievance coordinator." *Id.*

"If at any time the grievance coordinator determines the inmate has pursued his/her

grievance through state or federal courts, the grievance process will cease and the grievance will

be returned to the inmate." OAR-291-109-0160(4). "A grievance that has been returned to [an]

inmate by the grievance coordinator for procedural reasons cannot be appealed."

OAR-291-109-0160(5).

An inmate may appeal the institutional response to the inmate's grievance by and through

"the grievance appeal form (CD 117c)." OAR-291-109-0170(1)(a). Any such appeal "must be

submitted to the grievance coordinator together with the original grievance, attachments, and

staff response(s)." *Id.* The scope of the originally submitted grievance cannot be expanded on

appeal, and the inmate is not permitted to add new information regarding the grieved incident on

appeal, except where such information was unavailable to the inmate at the time the original

grievance was filed. *See id.* Any such appeal must be received by the grievance coordinator

"within 14 days from the date that the grievance response was sent to the inmate from the

grievance coordinator." OAR-291-109-0170(1)(b). The grievance coordinator is required to

send the appeal to the "functional unit manager," who is required to respond to the appeal "within

30 calendar days." *Id.* The grievance coordinator is then required to send the functional unit manager's appeal response to the inmate. *See* OAR-291-109-0170(2)(c).

In the event an inmate wishes to appeal the functional unit manager's decision regarding a grievance appeal, the inmate may do so "using the grievance appeal form (CD 117c)." OAR-291-109-0170(2)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, staff responses, and documentation related to the first grievance appeal." *Id.* The grievance coordinator must receive any such appeal "within 14 calendar days from the date that the first grievance appeal response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(2)(c). As with the first appeal, appeal of the functional unit manager's response cannot expand the scope of the original grievance, and cannot adduce new information regarding the originally grieved incident, except where such information was unavailable to the inmate at the time the original grievance or first appeal was filed. *See* OAR-291-109-0170(2)(a). The grievance coordinator is required to forward any such appeal to "the Assistant Director having authority to review and resolve the issue." *Id.*

The applicable Assistant Director is required to respond to any such appeal from a functional unit manager's grievance appeal response "within 30 calendar days." OAR-291-109-0170(2)(c). "The Assistant Director's . . . decision on an inmate's grievance appeal is FINAL, and is not subject to further [administrative] review." OAR-291-109-0170(2)(d).

On February 19, 2009, while housed at TRCI, Allen advised his spouse of his decision to terminate his affiliation with the Norteños, a gang whose members included TRCI inmates. Allen requested that his spouse alert TRCI officials to the fact that, in consequence of his

Page 8 - FINDINGS AND RECOMMENDATION

decision to leave the Norteños, he was in danger of reprisal from gang members, including gang

members operating within TRCI's Unit Six, the unit within which Allen was housed at that time.

That same day, Allen's spouse contacted TRCI guard captain Nickles, who is not a party to this

action, and advised him of Allen's decision to leave the Norteños and of the danger that Allen

believed he was in.  The following day, February 20, 2009, Allen's spouse contacted defendant

Davis (a guard captain at TRCI) and TRCI counselor Schotts (who is not a party to this action),

and advised them similarly.  Also on February 20, 2009, Allen sent an inmate communication

form to TRCI staff asking to be removed from Unit Six due to the danger he believed he was in

from members of his former gang.  Allen's spouse contacted Davis again the following day,

February 21, 2009, regarding the danger to Allen, and on that same day Allen again requested

transfer out of Unit Six via inmate communication form.  On February 22, 2009, Allen orally

advised TRCI guard corporal Reid (not a party to this action) of the danger he believed he was in

by virtue of being housed in Unit Six.

Later on February 22, two members of the Norteños assaulted Allen in Unit Six,

delivering what Allen characterizes as a brutal beating.[2]  Following the assault, Allen was

debriefed by defendant Bauer (a TRCI guard corporal) and other TRCI staff members, who

conveyed information provided by Allen to the TRCI Gang Task Force.  Allen was placed in

disciplinary segregation from February 22, 2009, through March 13, 2009, apparently for his own

safety.

On March 13, 2009, Allen was transferred from Unit Six to Unit Eight at TRCI.  In the

---

[2] Allen does not allege that he suffered significant injury in consequence of the assault of
February 22, 2009.

Page 9 - FINDINGS AND RECOMMENDATION

course of the transfer, Allen advised defendant Bauer that Unit Eight, like Unit Six, was "controlled" by the Norteños, so that the transfer was not well calculated to reduce the risk of reprisal that Allen faced.  Allen also so advised the officer in charge of Unit Eight.  Despite Allen's communicated misgivings, Allen was placed in Unit Eight.  Shortly after Allen's arrival in Unit Eight, on March 13, 2009, two members of the Norteños assaulted Allen, causing him to suffer significant injury.

In June and July 2009, Allen filed additional inmate communications regarding the ongoing threat to his safety from members of the Norteños.  Later, on August 7, 2009,[3] while Allen was being escorted along a hallway in Unit Two by defendant Torres, a TRCI guard specifically assigned to protect Allen when he was outside his own unit, Allen was assaulted by two members of the Norteños.[4]  Torres intervened and stopped the assault before Allen received any serious injury.[5]  On August 9, 2009, Allen was placed in administrative segregation, apparently for his own safety.

On August 17, 2009, Allen filed a grievance bearing the date August 12, 2009, which was assigned grievance number TRCI-2009-08-00056.  The August 17 grievance specifically

---

[3] By and through his complaint, Allen alleges that the assault took place August 9, 2009, but according to the grievance Allen filed approximately contemporaneously with the incident, the assault took place August 7, 2009.

[4] By and through his complaint, Allen alleges that he was assaulted by a single fellow inmate.  However, according to the grievance Allen filed approximately contemporaneously with the incident, he was assaulted by "two active Norteños."

[5] By and through his complaint, Allen alleges that Torres failed either to intervene or to stop the assault, but in the response to Allen's grievance regarding the assault, TRCI guard captain Thornton indicated that "CO Torres was able to stop the assault prior to [Allen] receiving any injury."

Page 10 - FINDINGS AND RECOMMENDATION

addressed only the assault of August 7, 2009.  In his grievance, Allen characterized the problem

as a "recurring issue" and indicated that Allen had "talked with administration about this issue,"

but did not in any way indicate that Allen had ever previously filed any grievance regarding the

previous assaults and did not make express reference to the assaults of February 22 or March 13,

2009.  Allen indicated that he wanted to be assured that he would not be assaulted again, and that

he was seeking compensation for his physical and psychological injuries.

Also on August 17, 2009, by and through his attorney, Allen filed a notice of tort claim in

connection with the assaults he had suffered while incarcerated at TRCI.

On August 21, 2009, TRCI staff responded to Allen's grievance of August 17, 2009,

indicating that "both assailants [we]re being dealt with in the Disciplinary process and the

courts."  TRCI's response further indicated that Allen was being placed in administrative

segregation pending review for placement in a housing unit in which the risk of further assault

could be more easily minimized.  The response indicated that "DOC and TRCI staff take

[Allen's] safety very seriously, [which] is why a staff member [wa]s assigned to [him] when [he]

w[as] off [his] unit," and that "DOC and TRCI administration w[ould] continue to monitor

[Allen's] safety concerns."  The response observed that "[t]he risk of being assaulted can be

minimized within a correctional facility; however the risk of assault is inherent within any

corrections facility not on lock-down."  TRCI declined to offer Allen compensation for his

injuries.

Despite the fact that TRCI prepared the foredescribed response to Allen's grievance of

August 17, 2009, Allen did not receive the response.[6]

On September 23, 2009, Allen filed a grievance bearing the date September 20, 2009, in connection with some of his personal property that had been misplaced during the period when Allen was in administrative segregation following the assault of August 7, 2009. Allen's grievance of September 23, 2009, was assigned grievance number TRCI-2009-09-00069.

On September 30, 2009, Allen was transferred to the Snake River Correctional Institution. While housed at SRCI, Allen was largely kept in segregated custody.

On October 3, 2009, TRCI staff located the missing personal belongings that were the subject of Allen's grievance of September 23, 2009. The belongings were delivered to Allen at SRCI.

In or around early December 2009, while Allen was still housed at SRCI, Allen made an attempt to contact the TRCI grievance coordinator via U.S. mail to inquire as to the status of TRCI's responses to his pending grievance or grievances. Allen received no reply to this inquiry, and TRCI has no record of ever having received it.[7] On December 15, 2009, Allen was transferred back to TRCI.

---

[6] Allen offers his sworn declaration that he never received the response. Defendants offer no direct evidence that the response was sent to Allen. The only evidence to bear on the question, other than Allen's declaration, is TRCI grievance coordinator Vicki Reynolds' communication to Allen dated February 23, 2011, discussed *infra*, in which Reynolds represented to Allen that the response was sent to Allen while he was housed at SRCI. Reynolds' representation to Allen is unlikely to be accurate in light of the fact that the response bears the date August 21, 2009, but Allen was not transferred to SRCI until September 30, 2009.

[7] Allen offers his own declaration testimony that he attempted to make this inquiry while housed at SRCI, but does not offer a copy of the inmate communication form he declares that he sent, and does not offer evidence that SRCI staff logged outgoing mail from Allen addressed to the TRCI grievance coordinator in or around November 2009.

Page 12 - FINDINGS AND RECOMMENDATION

On February 17, 2011, Allen sent an inmate communication form to the TRCI grievance

coordinator, inquiring as follows:

> When I was here back in 2009[,] I filed two gr[ie]v[a]nces[.]  One gr[ie]v[a]nce
> was sent on the 21st of March[, 2009,] and the other was sent on the 12th of
> August[, 2009].  Both were filed for ~~different~~ similar issues.  I was shipped out to
> S.R.C.I. and tried to get [a]n update by sending you [a] kyte but you never sent me
> [a] response.  Will you please look into this for me and send me [a] response in
> regard[] to both gr[ie]v[a]nces I sent you?  Thank you for all of your time, help,
> and consideration.[8]

Allen filed this action February 22, 2011.

In response to Allen's communication of February 17, 2011, on February 23, 2011 – the

day after Allen filed this action – TRCI grievance coordinator Vicki Reynolds indicated that she

had located both grievances and the responses thereto, stating as follows:

> Mr. Allen, [t]he responses to the two grievances:  TRCI-2009-08-00056 & TRCI-
> 2009-09-00069 were sent to you at SRCI.  If you need additional copies of the
> responses you will need to submit a CD-28 for .50¢ [*sic*] per page.

Reference to the documents of record establishes that, notwithstanding Reynolds' contrary

indication, Reynolds had located only one of the two grievances that were the subject of Allen's

communication of February 17, 2009.  TRCI-2009-08-00056 was Allen's grievance of August

2009, but the second grievance referenced by Reynolds, TRCI-2009-09-00069, was not Allen's

purported grievance of March 2009, but rather his grievance of September 2009, which had been

resolved to Allen's satisfaction shortly after his transfer to SRCI.  Moreover, while it appears

accurate that TRCI responded to Allen's grievance of September 2009 while Allen was housed at

SRCI (as indicated by Reynolds in her response), and that Allen received that response, it appears

---

[8]  I note that Allen makes no reference to having made any previous inquiry of TRCI's
grievance coordinator regarding the status of TRCI's responses, including the inquiry Allen
declares he made in or around December 2009.

highly unlikely that (as Reynolds further indicates) TRCI sent Allen the response to his August 2009 grievance (signed by TRCI Captain Thornton and dated August 21, 2009) during the time when Allen was housed at SRCI (in that he was not transferred to SRCI until September 30, 2009, more than one month after the response was signed).

Allen never filed any grievance expressly addressing the assaults of February 22 or March 13, 2009.[9] Allen likewise never grieved TRCI's failure to respond to his grievance of August 17, 2009, and never appealed TRCI's failure to provide the resolution Allen requested through that grievance.

---

[9] Allen declares that "[o]n March 21, 2009 [he] filed a grievance for the . . . failure to protect [him] from the assaults on February 22nd and March 13th," and further declares that he "never received a response to this grievance." Allen does not offer into evidence a copy of the grievance he purportedly filed on March 21. However, Allen produced a copy of the purported grievance to the defendants in discovery, and defendants have offered the produced copy into evidence. The purported grievance, which purports to grieve the negligence of TRCI officials in failing to protect Allen from both the assault of February 22, 2009, and the assault of March 13, 2009, bears the date March 21, 2009, indicates that Allen was housed in cell number "2-39B," bears no stamp indicating that it was received by TRCI staff, and bears no grievance number. The evidence of record indicates that, as of March 21, 2009, Allen was housed in a different cell, and was not transferred to cell 02-39B until March 25, 2009. The evidence further indicates that the purported grievance of March 21 was not entered into the TRCI inmate grievance log, as was the usual practice at TRCI (and as required under O.A.R. 291-109-0160(1)), and as were Allen's grievances of August 17 and September 23, 2009.

I note that the copy of Allen's August 17, 2009, grievance offered into evidence by the defendants bears a stamp indicating the date on which it was received and also bears the grievance number assigned to it, but that the copy of the same grievance attached as an exhibit to Allen's declaration bears no such stamp or number, suggesting that it may not have been the usual practice at TRCI to stamp or write grievance numbers on inmate copies of grievances.

Taking all of the foregoing circumstances into account – and the fact that Allen indicated in the text of his grievance of August 17, 2009, only that he had "talked with" administration officials regarding the "recurring problem" of failure to protect him adequately from inmate assaults, and not that he had previously grieved the issue – I conclude that Allen has not met his evidentiary burden to establish, in response to defendants' proffered evidence that no grievance was ever filed regarding the assaults of February 22 and March 13, 2009, that any such grievance was ever properly filed.

Page 14 - FINDINGS AND RECOMMENDATION

## ANALYSIS

I.    **Defendants' Federal Civil Procedure Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction as to Allen's Claims Against the State of Oregon**

Defendants move under Federal Civil Procedure Rule 12(b)(2) to dismiss Allen's negligence claim against the State of Oregon for lack of personal jurisdiction on the grounds that Oregon is entitled to Eleventh Amendment immunity from suit.  Allen does not oppose defendant's Rule 12(b)(6) motion.

It is well-established that the federal courts lack jurisdiction over actions brought by individuals against a state, state agency, or state official.  *See, e.g.*, *Seminole Tribe v. Fla.*, 517 U.S. 44, 54 (1996).  That is, states, state agencies, and state officials are immune from suit by private parties except where (i) Congress has validly abrogated that immunity or (ii) a state has expressly waived it.  *See id.*  The applicability of sovereign immunity constitutes a question of subject-matter jurisdiction.  *See, e.g.*, *Quillin v. Oregon*, 127 F.3d 1136, 1139 (9th Cir. 1997).

Here, Allen makes no showing that Congress has taken any action to abrogate Oregon's immunity to suit in connection with common-law negligence claims, or that Oregon has taken any action constituting either waiver of immunity or consent to be sued in connection with any such claim, and I am aware of no such action.  *See, e,.g.*, *Edelman v. Jordan*, 415 U.S. 651, 673-674 (1974) ("we will find waiver only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction") (citation, internal quotation marks, and internal modification omitted).  In consequence, the State of Oregon is entitled to assert immunity from suit in connection with Allen's negligence claim, and this court lacks subject-matter jurisdiction over that claim.  Allen's

negligence claim against the State of Oregon should therefore be dismissed for lack of subject-matter jurisdiction.

Because this court lacks subject-matter jurisdiction over Allen's claim against the State of Oregon, the court is without authority to consider defendants' Rule 12(b)(2) motion to dismiss that claim for lack of personal jurisdiction. Defendants' Rule 12(b)(2) motion should therefore be denied as moot.

## II. Defendants' Unenumerated Federal Civil Procedure Rule 12(b) Motion to Dismiss for Failure to Exhaust Administrative Remedies as to Allen's 42 U.S.C. § 1983 Claims Against the Individual Defendants

Defendants move under Federal Civil Procedure Rule 12(b) to dismiss both counts of Allen's 42 U.S.C. § 1983 claim against the individual defendants on the grounds that Allen failed to exhaust available administrative remedies as to both counts of that claim before bringing this action. As noted above, under the Prison Litigation Reform Act incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including actions brought under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a). Under the PLRA, the courts lack discretion to consider claims challenging prison conditions, including claims for money damages, except where such claims are filed following complete exhaustion of available administrative remedies, without regard to the nature of the available administrative remedies and without regard to the types of remedies available under available administrative grievance procedures. *See Porter*, 534 U.S. at 524, *citing Booth*, 532 U.S. at 739, 740 n. 5. For purposes of the PLRA, "complete exhaustion" of available administrative remedies requires that an inmate "complete the administrative review process in accordance with [all] applicable procedural rules,

Page 16 - FINDINGS AND RECOMMENDATION

including deadlines. . . ." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009), *quoting Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Notwithstanding the foregoing, the PLRA "does not require exhaustion when *no* pertinent relief can be obtained through the internal process." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis original). That is, a prisoner need not make further efforts to exhaust administrative remedies before filing a federal action where the prisoner has already received all available remedies through the administrative process, or where the prisoner "has been reliably informed by an administrator" that no further remedies are available. *Id.*

The first count of Allen's Section 1983 claim alleges the liability of defendants Mills, Iverson, Davis, Ryder, Dufloth, Edison, Myric, and Bauer for failure to protect him from a known risk of harm in violation of his rights under the Eighth Amendment in connection with the assaults on Allen at the hands of fellow prisoners that took place on February 22 and March 13, 2009. As noted above, it is more likely than not in light of the evidence of record that Allen filed no grievance regarding either of these two assaults. Allen's failure to file a timely grievance regarding either of the two assaults constitutes clear failure to exhaust available administrative remedies regarding these individual defendants' alleged violation of Allen's Eighth Amendment rights. This court is therefore without authority to consider the first count of Allen's Section 1983 claim.

Moreover, even if Allen had timely filed the grievance form bearing the date March 21, 2009, that Allen produced to defendants in discovery, purporting to grieve both assaults, that grievance would have been procedurally ineffective to initiate the available administrative remedy process in connection with the first count of Allen's Section 1983 claim for at least three

Page 17 - FINDINGS AND RECOMMENDATION

reasons.  First, the produced form purports to grieve two discrete incidents of failure to protect, in contravention of OAR-291-109-0140(1)(d), which requires that inmates file separate grievance forms for each incident grieved.  Second, the first count of Allen's Section 1983 claim alleges the liability of eight of the nine individual defendants in this action, whereas the produced form purports to grieve the actions only of defendants Bauer and Edison.  Allen makes no attempt to establish or to argue that he filed any grievance in connection with the actions or omissions of defendants Mills, Iverson, Davis, Ryder, Dufloth, or Myric in connection with the assaults of February 22 and March 13, 2009.  Third, the produced form purports to grieve both Bauer's and Edison's failure to protect Allen from a known risk of harm, in contravention of OAR-291-109-0140(3)(e), which requires that an inmate file separate grievance forms for each ODOC employee whose actions are the subject of the inmate's challenge.  At most, the produced form, if timely filed, could have initiated the administrative remedy process as to one defendant in connection with one of the incidents of assault, but there exists no principled way to determine which of the defendants or which of the assaults Allen might have intended to address through the produced form.

In addition, the ODOC grievance procedure is not exhausted until an inmate either receives all available remedies, is reliably informed by an administrator that no further remedy is available, or completes both of the two available levels of review of an initial grievance response. Allen makes no showing that he had received all available remedies through the grievance process or that any administrator ever advised him that no further remedy was available, and Allen's only evidence that he attempted to avail himself of grievance appeal procedures are his purported inquiry of December 2009 and his inquiry of February 17, 2011, regarding the status of

his purported grievances of March 21 and August 17, 2009.  Assuming without deciding that

Allen filed (or in good faith attempted to file) the produced grievance form on or around March

21, 2009, he became entitled under OAR-291-109-0160(2) to enquire as to the status of TRCI's

response thereto on or around May 15, 2009.  Had he made any such inquiry at or around that

time, and learned that the grievance coordinator had not received his grievance, Allen would

have had a good argument that he should be permitted to file (or refile) his grievance at that time

*nunc pro tunc* in light of his good faith belief that he had timely filed the form and attempted in

good faith to comply with all applicable administrative procedures.  Allen's failure to inquire as

to the status of TRCI's response to the purported grievance until, at the earliest, approximately

December 2009 (or, more verifiably, February 17, 2011) – as well as his failure to follow up on

either inquiry by grieving or further questioning TRCI's failure to respond to the inquiry of

December 2009 or by grieving or further questioning the TRCI grievance coordinator's response

to his February 17, 2011, communication, which did not acknowledge that Allen had filed any

grievance in March 2009 – constitutes a clear failure to exhaust applicable ODOC grievance

procedures, even on the *arguendo* assumption that the produced grievance form was timely

submitted.

The second count of Allen's Section 1983 claim alleges the liability of all individual

defendants for failure to protect him from a known risk of harm in violation of his rights under

the Eighth Amendment in connection with the assault Allen suffered at the hands of fellow

prisoners that took place on August 7, 2009.  It is undisputed that Allen timely filed a grievance

in connection with this assault, signed by Allen on August 12, 2009, and received by the TRCI

grievance coordinator on August 17, 2009.  The only defendant whose actions are challenged by

Page 19 - FINDINGS AND RECOMMENDATION

the grievance of August 17, 2009, is Torres. Allen's submission of the August 17, 2009, grievance was therefore sufficient to initiate available administrative procedures as to his challenge to the constitutionality of Torres' actions, but does not purport to grieve the actions of any of the other individual defendants.

Even as to Torres' alleged failure to protect Allen from a known risk of harm on August 7, 2009, however, Allen failed to exhaust his available administrative remedies, due to his undisputed failure either to appeal TRCI's response or to make timely inquiry regarding TRCI's failure to provide a response to his grievance. As noted above, I conclude in light of the evidentiary record that, notwithstanding defendants' contrary assertions, Allen did not receive TRCI's response dated August 21, 2009. Believing that TRCI had not yet responded to his grievance of August 17, 2009, Allen became entitled under OAR-291-109-0160(2) to enquire as to the status of TRCI's response thereto on or around October 1, 2009. By that date, Allen had been transferred to SRCI, where he was apparently held in administrative segregation until he was transferred back to TRCI on December 15, 2010. Allen does not take the position that he was no permitted to communicate with the TRCI grievance coordinator while housed at SRCI; to the contrary, he declares that he sent an inmate communication form to Vicki Reynolds, the TRCI grievance coordinator, in or around early December 2009, by which he attempted to inquire as to the status of TRCI's responses to his pending grievance or grievances.

There is no evidence that TRCI ever received Allen's inquiry of approximately December 2009. Assuming without deciding that it was in fact sent, it is undisputed that Allen made no follow-up inquiry prior to February 17, 2011. Allen provides no explanation for his delay in making any follow-up inquiry during the intervening period, and offers no argument or evidence

Page 20 - FINDINGS AND RECOMMENDATION

that he was ever informed by any person that he would be unable while housed at SRCI to pursue

administrative procedures initiated while he was housed at TRCI.  Moreover, rather than await a

response to his inquiry – by which he would have learned that TRCI had timely prepared a

response to his grievance of August 17, 2009 – Allen simply filed this action without attempting

to take advantage of available administrative appeals.

Allen argues that further efforts to pursue administrative remedies would have been

necessarily futile, obviating the need to pursue them before filing this action, in light of his

August 17, 2009, notice of tort claim.  In support of this argument, Allen points to

OAR-291-109-0160(4), which provides in part that "[i]f at any time the grievance coordinator

determines the inmate has pursued his/her grievance through state or federal courts, the grievance

process will cease and the grievance will be returned to the inmate," and to

OAR-291-109-0160(5), which provides that "[a] grievance that has been returned to [an] inmate

by the grievance coordinator for procedural reasons cannot be appealed."  The problems with

Allen's argument are twofold.  First, while Allen's attorney issued an Or. Rev. Stat. 30.275 notice

of claim on August 17, 2009 – a prerequisite to any state court action against a public agency or

employee of a public agency, but not required before bringing such an action in the federal courts

– he did not thereby initiate any state court action, and there is no evidence that any such state

court action was ever filed, or that the TRCI grievance coordinator ever determined that Allen

had pursued his grievance in any court prior to the date this action was filed.  Expressing the

intent to pursue a remedy in the courts is not the same thing as actually filing an action to do so,

and only the latter operates to bring a premature end to the ODOC grievance process.  Second,

Allen was never informed by any person that, following issuance of the tort claim notice, no

Page 21 - FINDINGS AND RECOMMENDATION

further remedy was available under the ODOC grievance procedure.

Allen's failure to appeal TRCI's response to his August 17, 2009, grievance within fourteen days of the date it was sent to him by TRCI's grievance coordinator, and/or failure to take reasonable and timely steps to determine that a response had been prepared and to attempt to appeal that response within a reasonable time after learning that a response had issued, constitutes failure to exhaust available administrative remedies in connection with the second count of Allen's Section 1983 claim. Absent exhaustion of available administrative remedies, this court is without authority to consider Allen's Section 1983 claim to the extent premised on the assault of August 7, 2009.

For the foregoing reasons, defendants' unenumerated Rule 12(b) motion to dismiss Allen's Section 1983 claim should be granted as to both counts of the claim.

## CONCLUSION

For the reasons set forth above, Allen's negligence claim against the State of Oregon should be dismissed for lack of subject-matter jurisdiction, defendants' Rule 12(b)(2) motion to dismiss (#17) Allen's negligence claim against the State of Oregon for lack of personal jurisdiction should be denied as moot, Allen's unenumerated Rule 12(b) motion to dismiss Allen's Section 1983 claim for failure to exhaust administrative remedies should be granted, and Allen's Section 1983 claim should be dismissed without prejudice. A final judgment should be prepared.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections

Page 22 - FINDINGS AND RECOMMENDATION

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 31st day of January, 2012.

Honorable Paul Papak
United States Magistrate Judge